IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | | |
|---|---|---|
| ANGEL RIVERA, | ) | 1:24-CV-00313-SPB-RAL |
| Plaintiff | ) | SUSAN PARADISE BAXTER<br>United States District Judge |
| vs. | ) | RICHARD A. LANZILLO<br>Chief United States Magistrate Judge |
| LAUREL HARRY, et al., | ) | |
| Defendants | ) | REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS |
| | ) | IN RE: ECF NO. 45 |

## I. RECOMMENDATION

Defendants' Motion to Dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) is before the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636. For the reasons discussed below, it is respectfully recommended that Defendants' motion, ECF No. 45, be GRANTED and that the Amended Complaint be DISMISSED with prejudice because further amendment would be futile.

## II. REPORT

### A. Background

Plaintiff Angel Rivera, an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), brings this *pro se* civil rights action against nine

individuals at the State Correctional Institution at Forest ("SCI-Forest") where Rivera was previously incarcerated: Secretary of the DOC Laurel Harry, Executive Deputy Secretary of Institutions ("EDSI") Tammy Ferguson, Regional Chief Licensed Psychologist Manager Cynthia Wright, Licensed Psychologist Manager Bruce Simons, Superintendent R. Irwin, Deputy Superintendent of Facility Management E. Mongelluzzo, Deputy Superintendent of Classification Services/Deputy Superintendent of Facility Management M. Blicha, Corrections Classification Program Manager/Deputy Superintendent of Centralized Services I. Gustafson, and Major J. Alexander. ECF No. 42, pp. 2–3. Rivera's claims relate to his placement on the Restricted Release List ("RRL") and his housing status in an Intensive Management Unit ("IMU") program. Earlier in this litigation, Defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted, ECF No. 31, and the Court directed Rivera to file either an opposition to the motion or an amended complaint, ECF No. 35. Rivera timely filed his Amended Complaint, ECF No. 42, and the Court subsequently denied Defendants' motion as moot, ECF No. 43.

As set forth in his Amended Complaint, the events giving rise to Rivera's claims took place at SCI-Forest in 2023. *See generally* ECF No. 42. While housed in the Behavior Management Unit ("BMU"), Rivera assaulted a staff member. *Id.* ¶ 39. Thereafter, Rivera's counselor initiated a vote sheet to remove Rivera from the BMU, conduct a Special Observation Assessment Unit ("SOAU") evaluation, and place him on the RRL. *Id.*

Pursuant to DC-ADM 802, an inmate may be placed on the RRL when he/she poses a threat to the secure operation of the facility that cannot be alleviated by a transfer. *Id.* ¶ 35. Criteria for placement includes assaultive, sexual abuse, and escape history, and risk of threat to the orderly operation of a facility. *Id.* ¶ 30. Inmates on the RRL are generally sent to the IMU, a Security Level 5 housing unit. *Id.* ¶ 20.

In May 2023, EDSI Ferguson authorized Rivera's placement on the RLL with Secretary Harry's approval. *Id.* ¶ 46. The accompanying RRL Vote Sheet indicates Rivera met the criteria for placement due to his history of assaults against staff and inmates. *Id.* ¶¶ 31, 40. Defendants Alexander, Gustafson, Blicha, Mongelluzzo, and Irwin signed off on the Vote Sheet. *Id.* ¶ 41. Defendant Simons prepared a psychological evaluation report for consideration in determining whether to approve Rivera's placement on the RRL. *Id.* ¶ 43. According to Rivera, however, he never met with Defendant Simons, and the report contained information copied and pasted from another inmate's records. *Id.* ¶¶ 43–44.

On May 11, 2023, the prison's Program Review Committee ("PRC") informed Rivera he was being sent to the IMU. *Id.* ¶ 52. The PRC told Rivera he could not grieve his placement on the RRL or the process, that "he would be afforded Due Process at his yearly annual review to be continued or removed from the RRL," and that his removal from the RRL would "likely be contingent upon his completion of the IMU" program. *Id.* ¶¶ 53–54. Rivera submitted grievances regarding his placement on the RRL and appealed the RRL decision. *Id.* ¶ 55. At a May 18, 2023 PRC hearing,

Defendants Blicha, Gustafson, and Alexander informed Rivera his grievances would not be filed because he was not permitted to appeal his RRL status. *Id.* ¶ 56.

On June 1, 2023, Defendant Wright interviewed Rivera for removal from the BMU and placement in the IMU, and stated Rivera had to engage in the program in order to be removed from the RRL. *Id.* ¶ 58. On June 29, 2023, Rivera was transferred to SCI-Phoenix and housed in the IMU. *Id.* ¶ 59. He states the IMU offers limited programming, social interaction, and family contact, and that these conditions have caused him severe stress, depression, anxiety, sleeplessness, short term memory loss, hopelessness, suicidal ideations, body aches, distrust, and exacerbated PTSD symptoms. *Id.* ¶¶ 60–62. Rivera further states he "has not been afforded the ability to appeal his RRL placement or be offered an annual review with the opportunity of getting off of the RRL." *Id.* ¶ 64.

Based on the foregoing, Rivera asserts Defendants acted with deliberate indifference to his health and safety in violation of the Eighth Amendment and deprived him of his Fourteenth Amendment right to due process. *Id.* pp. 11–13. For relief, he seeks a declaration that Defendants violated his rights and that the practice of solitary confinement is unconstitutional, immediate release to general population at an institution of his choice, an order ending solitary confinement in Pennsylvania, a policy directing DOC officials be fired for violating inmates' rights, institutional incentives of his choice, and compensatory and punitive damages. *Id.* pp. 13–14.

Defendants now move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 45. They argue Rivera's official capacity claims

are barred by the Eleventh Amendment to the United States Constitution and further that the Amended Complaint fails to plead factual allegations sufficient to state a claim for relief. *See* ECF No. 46. Rivera filed an opposition to the motion, ECF No. 57, and the matter is now ripe for disposition.[1]

B. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must, under Federal Rule of Civil Procedure 8(a)(2), contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). In other words, plaintiffs must allege facts sufficient "to raise a right to relief above the speculative level" that "nudge[] their claims across the line from conceivable to plausible." *Id.* at 555, 570. Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).

In deciding a Rule 12(b)(6) motion, the Court accepts as true the complaint's well-pleaded factual allegations and examines them in a light most favorable to the

---

[1] To the extent Rivera's brief in opposition to the motion to dismiss includes additional factual allegations not found in his Amended Complaint, they will not be addressed. *Boston v. Prime Care Med., Inc.*, 2018 WL 3032853, at *5 n.6 (E.D. Pa. June 18, 2018) (a plaintiff "may not assert new claims or rely on new facts in response to a motion to dismiss"); *Hammond v. City of Philadelphia*, 2001 WL 823637, at *2 (E.D. Pa. June 29, 2001) ("A party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion." (collecting cases)); *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). However, the Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotations and citations omitted); *see Iqbal*, 556 U.S. at 678. The Court's focus is simply whether the challenged claims should be allowed to move forward, not whether the plaintiff will ultimately prevail on his claims. *See Twombly*, 550 U.S. at 563 n.8. Further, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents" when deciding the motion to dismiss. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Additionally, because the Court granted Plaintiff leave to proceed *in forma pauperis* in this action, *see* ECF No. 7, his pleading is subject to the screening provisions in 28 U.S.C. § 1915(e)(2). That statute requires the Court to review the complaint for cognizable claims and *sua sponte* dismiss the action or any portion thereof that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of the case "at any time"); *Muchler v. Greenwald*, 624 Fed. Appx. 794, 796 (3d Cir. 2015). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Banks v. County*

*of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008); *Schreane v. Seana*, 506 Fed. Appx. 120, 122 (3d Cir. 2012).

Finally, because Rivera is proceeding *pro se*, his allegations, "however inartfully pleaded," must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (the "initial assessment of the *in forma pauperis* plaintiff's factual allegations must be weighted in favor of the plaintiff"). If the Court can reasonably read his pleading to state a valid claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *U.S. ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969). But while courts construe *pro se* pleadings liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "there are limits to [this] procedural flexibility," and the litigant must still allege sufficient facts to support a valid claim, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

C. Analysis and Discussion

As an initial matter, Rivera concedes to the dismissal of his claims against Defendants in their official capacities, his claims against Defendant Wright, and his Fourteenth Amendment due process claim. ECF No. 57, pp. 4–6. The undersigned therefore recommends that the Court dismiss all official capacity and due process claims and all claims against Defendant Wright. This leaves Rivera's Eighth

Amendment claim against Defendants in their individual capacities as the only remaining claim in this action.

The Amended Complaint alleges Defendants were deliberately indifferent to the risk of harm caused by subjecting Rivera to the conditions of prolonged solitary confinement on the RRL while housed in the IMU.

To state a plausible Eighth Amendment conditions of confinement claim, a prisoner must plead facts that show (1) an objectively, sufficiently serious deprivation of life's necessities, and (2) the prison official acted with deliberate indifference by knowing of and disregarding an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). An inmate is not entitled to relief simply because of exposure to uncomfortable or inconvenient conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Thus, to meet the objective component, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities" or a "single, identifiable human need." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (only "extreme deprivations" are sufficient to make out an Eighth Amendment claim). These needs include "food, clothing, shelter, sanitation, medical care and personal safety." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). As to the subjective component, a prison official's conduct violates the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

This requires "a showing that prison officials actually knew of and disregarded constitutional violations." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010) ("A plaintiff may demonstrate deliberate indifference by showing that the risk of harm was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past' such that the defendants 'must have known' about the risk." (quoting *Farmer*, 511 U.S. at 842–43)). In evaluating this prong, the court "may also consider whether officials 'had a legitimate penological purpose' behind their conduct." *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 446 (3d Cir. 2020) (citation omitted) ("The Eighth Amendment prohibits punishments without penological justification.").

Rivera's claim fails at the first step of the analysis because the Amended Complaint fails to allege an extreme deprivation of life's basic necessities as contemplated by the Eighth Amendment.

First, Rivera's placement on the RRL in the IMU does not in and of itself constitute an unconstitutional condition of confinement. *See Young*, 960 F.2d at 364 ("Segregated detention is not cruel and unusual punishment *per se*, as long as the conditions of confinement are not foul, inhuman or totally without penological justification."); *Hutto v. Finney*, 437 U.S. 678, 686 (1978) ("It is perfectly obvious that every decision to remove a particular inmate from the general prison population for

an indeterminate period could not be characterized as cruel and unusual."); *Johnson v. Wetzel*, 209 F. Supp. 3d 766, 777 (M.D. Pa. 2016) ("a prisoner's placement in solitary confinement does not, in itself, violate the Constitution"); *Harris v. Little*, 2025 WL 720089, at *6 (E.D. Pa. Mar. 6, 2025) ("simply being placed in Administrative Custody or on the RRL does not violate the Eighth Amendment" (collecting cases)). "[T]he decision where to house inmates is at the core of prison administrators' expertise," *McKune v. Lile*, 536 U.S. 24, 39 (2002), and they are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). As such, segregated confinement "may be a necessary tool of prison discipline, both to punish infractions and to control and perhaps protect inmates whose presence within the general population would create unmanageable risks." *Young*, 960 F.2d at 364.

Second, while Rivera generally complains that inmates on the RRL are afforded little to no social interaction, environmental stimulation, medical or mental health treatment, sleep, or exercise, he fails to elaborate upon the conditions he experienced or imply that any deprived him of a human need.[2] Nor do the allegations describe conduct that could be construed as such. *See, e.g.*, *Whitney v. Wetzel*, 649 Fed. Appx. 123, 127 (3d Cir. 2016) (allegation that inmate "was forced to live with

---

[2] For example, Rivera contends there is a shortage of medical and mental health providers and that staff "do not care to do their jobs," ECF No. 42, ¶ 21, but does not say he was denied care. *See Graziano v. Pa. Dep't of Corr.*, 2023 WL 6389756, at *20 (W.D. Pa. Sept. 30, 2023) ("conclusory assertion that . . . unit lacks mental health care does not constitute a deprivation of medical care").

mentally ill inmates at the SMU, where inmates banging on toilets and sinks created intolerable noise, the air stank of urine and feces, and he was exposed to inmates throwing urine and feces" failed to meet objective component of Eighth Amendment claim); *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) ("withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline" does not violate the Eighth Amendment); *Henry v. Dep't of Corr.*, 131 Fed. Appx. 847, 850 (3d Cir. 2005) (restriction to non-contact visitation does not "violate[] civilized standards of humanity and decency" (alteration in original) (citation omitted)); *Fantone v. Herbik*, 528 Fed. Appx. 123, 128 n.5 (3d Cir. 2013) ("denial of telephone and television privileges does not amount to cruel and unusual punishment"); *Warrick v. Harry*, 2026 WL 2125877, at *10 (M.D. Pa. July 23, 2026) (limited exercise equipment/exercise time does not amount to an Eighth Amendment violation); *Graziano*, 2023 WL 6389756, at *20 (conclusory allegation that inmate's mental health status put him at heightened risk of harm when held in RHU insufficient to show that such placement "violate[d] civilized standards of humanity and decency" (alteration in original) (quoting *Griffin*, 112 F.3d at 709)).

Additionally, Pennsylvania district courts have found that the conditions prescribed by the IMU program phases do not violate the Eighth Amendment. *See, e.g.*, *Harris*, 2025 WL 720089, at *6 (stating that conditions in the IMU "track the standards generally found constitutional"); *Rosario v. Wetzel*, 2025 WL 755516, at *5 (W.D. Pa. Mar. 10, 2025) (finding plaintiff failed to show conditions in IMU violated Eighth Amendment and observing that plaintiff was "eligible to be housed under less

restrictive conditions as he progressed through each phase of the program" and that PRC reviews and ability to file grievances "gave him a forum to address any concerns related to his confinement"), *aff'd*, 2025 WL 2452464 (3d Cir. Aug. 26, 2025); *Batchelor v. Little*, 2022 WL 16749039, at *9 (E.D. Pa. Nov. 7, 2022) (finding plaintiff failed to show four-year placement on RRL and confinement in IMU created a substantial risk of harm; plaintiff could move through phases to obtain more privileges, and though out of cell hours were limited, he had access to mental health resources, social interaction, environmental stimulation, and exercise); *Wayne v. Wetzel*, 2024 WL 3696467, at *6 (E.D. Pa. Aug. 7, 2024) (finding conditions in IMU "are more restrictive than those in general population, but they are not so objectively serious to constitute cruel and unusual"); *see also Norris v. Davis*, 2011 WL 1627340, at *6 (W.D. Pa. Apr. 28, 2011) ("courts unanimously have found that the harsh conditions of confinement in the various restrictive housing units in the Pennsylvania state institutions, . . . without more, do[ ] not violate the Eighth Amendment" (collecting cases)). Though Rivera contends inmates on the RRL housed in the IMU are subject to indefinite prolonged solitary confinement, as these courts have recognized, inmates obtain increasing opportunities for socialization and stimulation as they progress through the program phases, and Rivera himself admits that the restrictions vary "depending on the status of programming you are on," ECF No. 42, ¶ 20.

As to the subjective component of Rivera's Eighth Amendment claim, there is no question that prolonged solitary confinement may pose risks to an inmate's mental

health. *See Palakovic v. Wetzel*, 854 F.3d 209, 225–26 (3d Cir. 2017); *Johnston v. Wetzel*, 431 F. Supp. 3d 666, 677–78 (W.D. Pa. 2019). Here, however, there are no allegations to support that Defendants knew facts from which they could have inferred that Rivera should not be on the RRL in the IMU. *See Farmer*, 511 U.S. at 845 ("prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause"). The Amended Complaint alleges only that Defendants were generally aware of the risks associated with prolonged solitary confinement. But it does not plead facts suggesting any Defendant personally knew Rivera's classification and housing placement posed a substantial risk of serious harm to his health or safety.[3] Moreover, Rivera admits he met the criteria for placement on the RRL due to his extensive history of assaultive behavior against staff and other inmates. ECF No. 42, ¶ 31. *See Batchelor*, 2022 WL 16749039, at *9–10 (finding plaintiff could not show deliberate indifference by former or acting Secretaries where they placed and continued him on RRL because of misconduct); *Nifas v. Beard*, 374 Fed. Appx. 241, 244 (3d Cir. 2010) (inmate's history of misconducts "was more than sufficient to show that his placement in AC and on the

[3] Rivera's assertion that the decision to place him on the RRL was the product of coercion via falsified documentation is wholly conclusory. Accepting as true the Amended Complaint's allegation that Defendant Simons copied and pasted another inmate's records into Rivera's psychological evaluation report, there are no facts to support that Simons intentionally provided incorrect information in Rivera's report or that he did so for the purpose of coercing Rivera's placement on the RRL. Nor does the Amended Complaint offer any facts that could support a plausible claim that any other Defendant prepared, utilized, or submitted documentation he or she knew to be false. *See Van Tassel v. Piccione*, 608 Fed. Appx. 66, 69–70 (3d Cir. 2015) (non-specific allegations that broadly implicate a defendant without delineating individual conduct are legally insufficient). As this Court has previously observed, "Eighth Amendment liability cannot be based on simple negligence or lack of due care," nor can a defendant "be liable for failing to protect a plaintiff from a risk of harm concerning which he has no knowledge." *Grier v. Clark*, 2020 WL 2105859, at *4, *5 (W.D. Pa. Apr. 7, 2020), *report and recommendation adopted*, 2020 WL 2104794 (W.D. Pa. May 1, 2020).

RRL served a legitimate penological interest"); *Rosario*, 2025 WL 2452464, at *2–3 ("restrictions placed upon [inmate] were amply justified" by his record of violent behavior, and "[p]rison officials thus had good reason to place him in segregated detention and to keep him there until he was able to control his antisocial behavior"). Rivera further admits that Licensed Psychologist Manager Cynthia Wright interviewed him for placement in the IMU, ECF No. 42, ¶ 58, and does not contend that Wright (or any other official) recommended against such placement.[4] And, while Rivera complains his placement on the RRL in the IMU causes him negative mental health effects, *id.* ¶¶ 60–61, there are no allegations to support that any Defendant knew Rivera was experiencing these issues. Nor does the Amended Complaint allege Rivera requested but did not receive treatment for his symptoms. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference").

In sum, the Amended Complaint fails to allege facts showing that Rivera's placement on the RRL and the conditions he experienced in the IMU program created a substantial risk of serious harm or deprived him of the minimal civilized measure of life's necessities. Moreover, the Amended Complaint pleads no facts about any Defendant's personal knowledge of a particular risk to Rivera. As such, nothing in

---

[4] Rivera attached as exhibits to his original complaint copies of a March 2023 BMU Removal/RRL Placement memo, the RRL Vote Sheet and Placement Request form, and Special Psychological Assessment reports by Simons and Wright, all of which belie any argument to the contrary. *See* ECF No. 9.

his pleading supports an inference that any Defendant acted with deliberate indifference to Rivera's health or safety as related to any allegedly unconstitutional condition. Accordingly, the Amended Complaint fails to state a viable Eighth Amendment claim.

D. Conclusion

Consistent with the foregoing, it is recommended that this action be dismissed for failure to state a claim upon which relief may be granted.

III. LEAVE TO AMEND

*Pro se* litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend . . . unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004), *abrogated on other grounds by Iqbal*, 556 U.S. at 678. However, the court "need not provide endless opportunities for amendment, especially where such opportunity already has been enjoyed." *Baker v. Moon Area Sch. Dist.*, 2018 WL 4057179, at *8 (W.D. Pa. Aug. 27, 2018) (internal quotations and citation omitted). Indeed, a district court's "substantial leeway in deciding whether to grant leave to amend" is "even broader" where "the court has already granted the requesting party an opportunity to amend his complaint." *Lake v. Arnold*, 232 F.3d 360, 373–74 (3d Cir. 2000).

In this case, given the nature of the defects in Rivera's claims, and considering that Rivera has previously been put on notice of the deficiencies in his pleading via Defendants' prior motion to dismiss and permitted to file an amendment, the undersigned finds it would be futile to allow Rivera to file another amended

complaint. The undersigned therefore recommends that the District Court dismiss this action with prejudice for failure to state a claim upon which relief can be granted.

IV. NOTICE CONCERNING OBJECTIONS

In accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72, and Local Rule 72(D)(2), the parties may seek review by the District Court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the Objections shall have fourteen (14) days from the date of service of Objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

Respectfully submitted this 17th day of August, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE